**Robert O. WRIGHT, Appellant,**

v.

**Patricia A. WRIGHT, Appellee.**

**No. 11685.**

District of Columbia Court of Appeals.

Submitted March 28, 1978.

Decided May 19, 1978.

Robert O. Wright, pro se.

No brief was filed on behalf of appellee.

Before NEBEKER and FERREN, Associate Judges, and HOOD, Chief Judge, Retired.

NEBEKER, Associate Judge:

Appellant (Mr. Wright) was granted a .divorce from appellee (Mrs. Wright) upon proof that the parties had been voluntarily separated for more than one year. As part of its judgment, the trial court awarded custody of the parties' two unemancipated minor children to Mrs. Wright, ordered Mr. Wright to pay $150 per month for the support of each of the unemancipated minor children, and denied Mrs. Wright alimony. The trial court also entered judgment against Mr. Wright for a deficiency under a prior order of support. Mr. Wright, pro se in this court,[1] argues in essence that the terms of the judgment related to child support are not supported by the record.[2] We agree.

I

The trial court entered the following written findings of fact with respect to the award of child support:

> 11. That the Plaintiff, Robert O. Wright, is able to provide for the support of his two (2) unemancipated minor children.

---

1. Mrs. Wright has not filed a brief.

2. Appellant's other arguments have been liberally construed, fully considered, and found to be without support in the record or, in view of our disposition, moot.

12. That the needs of the unemancipated children herein are approximately Five Hundred Dollars ($500.00) per month, and the Defendant is in need of financial assistance from the Plaintiff in order to properly maintain said children.

In addition, the trial court orally announced its findings that two minor children no longer required support and that the needs of the two unemancipated children required the expenditure of $145 per month for rent, $200 per month for food, $50 per month for clothing, and $105 per month for medical, dental, recreation, and other incidental expenses. The sum of these expenses is $500 per month, and each expense finds support in the record.

No written conclusions were entered with respect to child support, but the court orally concluded that "what the Court is going to order [Mr. Wright] to pay is $150.00 per month per child, . . . and he may pay $150.00 bi-weekly[3] . . ." and that Mrs. Wright must bear the excess expense.

The trial court, during the course of these proceedings, judicially noticed the contents of the files in another Superior Court proceeding, which had commenced upon Mrs. Wright's complaint for separate maintenance in April 1970.[4] After a hearing, the court in the earlier case had ordered, on December 8, 1971, that Mr. Wright pay $40 per week toward the support of Mrs. Wright and their four minor children. This order contained no findings relevant to the needs of the children or Mrs. Wright or of Mr. Wright's ability to pay. Subsequent to the commencement of the instant case by Mr. Wright's complaint for divorce, Mrs.

Wright obtained garnishment upon fifty percent of Mr. Wright's disposable income upon proof that Mr. Wright was $8,760 in arrears in payment of the $40 per week ordered in 1971. When judgment was entered in the instant case, some of this amount had been satisfied by garnishment while the total indebtedness had increased at the rate of $40 per week, with the result that $8,123.46 remained due. Judgment in this amount was entered in the instant case in addition to the order that Mr. Wright pay $300 ($150 per child) per month in current child support.

The only evidence in the instant case of Mr. Wright's ability to pay is his testimony and a statement of earnings (published by his employer), which was authenticated and verified by Mr. Wright. That statement reflects gross wages of $406.40 per bi-weekly pay period.[5] From this gross amount are deducted (by his employer) the following: state and federal taxes, $88.12; medical insurance premiums, $20.01; retirement contribution, $28.45; garnishment for unpaid support under the 1971 order, $134.91; and an allotment paid to the lender on an automobile $68.00. Mr. Wright's net bi-weekly take-home pay is $66.91. There is no evidence that he has any substantial assets[6] or additional source of income other than occasional loans from friends and relatives.

Clearly, Mr. Wright is unable to pay $300 per month in child support with his net pay of $66.91 bi-weekly. Even had he not become in arrears on the 1971 order, his net pay would be only $201.82 bi-weekly, the equivalent of $432.47 per thirty-day month.

3. The judgment ordered that Mr. Wright pay $150 per month per child on the fifteenth day of each month. The apparent ambiguity of the court's oral order, therefore, was resolved.

4. Although those files have not been included in the record on this appeal, we may judicially notice their contents. *Ludington v. Bogdanoff,* D.C.App., 256 A.2d 921, 922 n. 2 (1969).

5. This amount was entered for the then-current 80 hour pay period. It appears from the year-to-date entries that Mr. Wright also received, on average, approximately $40 gross per pay period for overtime, which would be reduced by the deductions discussed *infra.* Our conclusions are unaffected by this overtime pay, and our discussion will relate only to the evidence reflecting base pay.

6. Although he has an automobile, he testified that its value was approximately the same as his indebtedness on it.

After payment of $300 per month in current child support, Mr. Wright would be left with approximately $132 per month for his own needs—about half of the $250 per month the trial court found to be the needs of each minor child. The court suggested, however, that Mr. Wright might be able to pay both his arrearages (by garnishment) and the new award of $300 per month:

Now, Mr. Wright looks like a young man to me and he looks like a healthy man to me. I don't know how healthy he is, but I know this: Mr. Wright can get out and get another job to help pay the support that he owes and he can do more than borrow from his mother and his friends. He can get out there and find himself an additional job to take care of things, and so I have no sympathy on that last issue [ability to pay] whatsoever.

## II

■ In a divorce or separate maintenance action, the trial court is invested with broad discretion under D.C. Code 1973, § 16–916(a) in determining the rights of the parties and their minor children to support.[7] In an original action for such support, the trial court's exercise of discretion will not be set aside for abuse unless the order of support is not reasonably related to the

court's written findings with respect to the needs of the persons to receive such support and the ability of the payor to pay. *Smith v. Smith*, D.C.App., 344 A.2d 221, 223 (1975); *Hamilton v. Hamilton*, D.C.App., 247 A.2d 421, 422 (1968); *Rutherford v. Rutherford*, D.C.App., 189 A.2d 124, 125 (1963). Where, however, the trial court's order modifies a prior order of support, the court must also make written findings to support its conclusion that a material change in the circumstances of the parties or their children necessitates modification. *Tennyson v. Tennyson*, D.C.App., 381 A.2d 264 (1977); *Smith v. Smith, supra; Sheridan v. Sheridan*, D.C.App., 267 A.2d 343 (1970); *Hamilton v. Hamilton, supra.*

■ In the instant case, there pre-existed a valid[8] order of support for Mrs. Wright and the parties' four minor children. Although the judgment of divorce terminated Mrs. Wright's entitlement to support under the prior order,[9] so much of the prior order as related to child support remained in effect unless properly modified. *Foley v. Foley*, D.C.App., 336 A.2d 549, 551 n. 1 (1975).

■ Although the trial court's oral findings[10] respecting the current needs of the children are not clearly erroneous, such findings are an insufficient predicate for modification of the 1971 order. The trial court did not find—nor does the record re-

---

7. The language of this section at the time the trial court's order was entered was as follows:

(a) Whenever any husband shall fail or refuse to maintain his wife, minor children, or both, although able to do so, or whenever any father shall fail or refuse to maintain his children by a marriage since dissolved, although able to do so, the court, upon proper application, may decree, pendente lite and permanently, that he shall pay reasonable sums periodically for the support of such wife and children, or such children, as the case may be, and the court may decree that he pay suit money, including counsel fees, pendente lite and permanently, to enable plaintiff to conduct the case.

This language has been amended to provide that each spouse has an obligation to support the other and that both parents have an obligation to support their children. D.C.Code 1977 Supp. IV, § 16–916(a).

8. Mr. Wright asserts on this appeal—for the first time—that the 1971 order was obtained through fraud. His remedy, if any, lies in the trial court. *See Dausuel v. Dausuel*, 90 U.S. App.D.C. 275, 195 F.2d 774 (1952).

9. *Holmes v. Holmes*, 81 U.S.App.D.C. 132, 134, 155 F.2d 737, 739 (1946) ("the final decree [of divorce] . . . terminates the wife's right to receive alimony under a preceding separation decree predicated on her status as a wife." [Footnote omitted.]). Because Mrs. Wright has not appealed the trial court's denial of alimony, we need not consider whether that denial constituted, in effect, a modification for which separate findings are required.

10. These findings were not reduced to writing as required. *Sheridan v. Sheridan, supra*. We perceive, however, no prejudice to Mr. Wright in this omission.

flect—a change in either the needs of the children or the ability of the parents to provide for those needs which would justify an increase in Mr. Wright's obligation of support. To the contrary, the only finding of change is the finding that two of the four minor children awarded support by the 1971 order had emancipated themselves—a circumstance tending to reduce Mr. Wright's obligation.[11] *See Tennyson v. Tennyson, supra* at 266. Modification of the 1971 order, therefore, was not justified. We vacate the trial court's order insofar as it pertains to child support and remand for such further proceedings as may be required in the interest of fairness to both litigants.

Upon remand, the court must consider (and make written findings relevant to) not only the changes of circumstances, if any, since entry of the 1971 order but also the ability of Mr. Wright to pay any increase that might be justified by those changes. A father has a duty to support his needy children, but that duty is commensurate only with his ability to do so. An order of child support may not be used to penalize an errant father through the imposition of harsh financial terms. *Hamilton v. Hamilton, supra* at 422; *Johnson v. Johnson*, D.C.Mun.App., 163 A.2d 127, 128 (1960).

The judgment of divorce and custody decree are affirmed; the judgment for $8,123.46 is affirmed without prejudice to opening the judgment in the interests of justice;[12] the order for child support is vacated; and this case is remanded for further proceedings.

*So Ordered.*

---

**11.** Whether the garnishment of Mr. Wright's wages for delinquent child support might, under the circumstances, present another such change of circumstances is an issue we need not decide.

**12.** It does not appear that Mrs. Wright moved for judgment upon the 1971 order deficiency

amount until closing argument. Should the court determine that changed circumstances warrant reduction of the 1971 order, such reduction may be made retroactive to the commencement of these proceedings. *Dausuel v. Dausuel, supra* note 8.