**Sheila L. GRAHAM, Appellant,**

v.

**Fred P. GRAHAM, Appellee.**

No. 84–1509.

District of Columbia Court of Appeals.

Argued Nov. 2, 1988.
Decided June 7, 1991.
Rehearing En Banc Denied Nov. 1, 1991.

Sheila L. Graham, pro se.

Robert Case Liotta, Washington, D.C., for appellee.

Robert D. Dinerstein, Nancy L. Cook, Leslie Orloff, Aileen Johnson, Washington, D.C., and Marsha Stelson, Law Student, filed a brief on behalf of amicus curiae, Women's Legal Defense Fund.

Before TERRY, Associate Judge, GALLAGHER and MACK,[1] Senior Judges.

PER CURIAM:

This is an appeal from an order modifying an award of alimony and child support. At issue is whether an increase in the non-custodial parent's ability to pay can, by itself, constitute a material change in circumstances sufficient to justify an increase in support. We conclude that it can and reverse the order of the trial court.

I.

In March 1982, after twenty years of marriage, the parties divorced. Pursuant to the divorce decree, Mr. Graham was

1. Judge Mack was an Associate Judge at the time of argument. Her status changed to Sen-    ior Judge on December 1, 1989.

ordered to pay Mrs. Graham alimony of $250 per week and child support of $375 per week ($125 for each of their three children); in addition, he was to pay half the monthly mortgage on the marital home and all private school tuition for the children. At about the time the judgment of absolute divorce was entered, Mr. Graham signed a new contract with his employer which provided for significant salary increases.[2] Mr. Graham had been earning approximately $100,000 in salary in 1981; under the new contract, his salary was to be raised to $185,000 in 1982; $210,000 in 1983; $230,000 in 1984; and $255,000 in 1985. In August 1982, after negotiations between the parties about increasing support payments in light of these salary increases had broken down, Mrs. Graham filed a Motion to Enforce Agreement or in the Alternative for Increased Alimony and Child Support.

On July 27, 1984, after a three-day evidentiary hearing, the trial court issued a Memorandum Opinion and Order in which it held, *inter alia*, that an increase in the non-custodial parent's income, no matter how great, was, by itself, an insufficient basis upon which to modify a support order. Relying on *Sheridan v. Sheridan*, 267 A.2d 343 (D.C.1970), the trial judge stated that in order to prove a "material change in circumstances" sufficient to justify an increase in support, Mrs. Graham was required to demonstrate that the needs of herself and her children had increased

since the original support order was entered; only after this threshold showing was made would Mr. Graham's increased ability to pay be taken into account. Nonetheless, the trial court found that there had been a modest increase in the needs of Mrs. Graham and the children and that Mr. Graham had the financial resources to contribute toward meeting those needs. The court thus increased Mr. Graham's child support obligation $15 per week per child to $140 per week per child. In addition, the court ordered that the alimony paid to Mrs. Graham be increased from $250 to $350 per week; however, as Mrs. Graham was at the time attending law school part-time and was expected to complete her studies in the spring of 1986, the court ordered that the alimony be decreased to $200 per week beginning in September 1986. Mrs. Graham was also awarded $1,000 in attorney's fees.[3]

## II.

■ ■ Mrs. Graham, supported by amicus, asserts that the trial court applied an incorrect legal standard in modifying the original support order and thus unfairly limited the amount of the increase. She contends that an increase in the non-custodial parent's ability to pay can, by itself, provide a proper basis for an increase in support, beyond or without any proven increase in the needs of the children or the other spouse. We agree.[4]

---

2. Mr. Graham signed his new employment contract on March 11, 1982, with the terms of the contract made retroactive to January 31, 1982. To place this in chronological context, the trial of the divorce was begun on January 7, 1982, the trial court issued an oral order granting the divorce on January 22, 1982, and the written judgment of absolute divorce was entered on March 23, 1982.

3. After the modification order was issued, Mrs. Graham filed a Motion for Reconsideration with the trial court, which was denied as to all matters material here.

4. Mrs. Graham makes several other assertions of error in her appeal. Because of our disposition of this initial issue, we are not required to reach Mrs. Graham's other contentions. In view of the fact that certain of these issues are

likely to arise again on remand, however, we offer the following observations as guidance.

First, Mrs. Graham asserts that the trial court made various factual errors in assessing particular expenses, such as home repairs, clothing, etc. These claims are baseless: the trial judge was thorough in reviewing each household expense that had allegedly increased, and each of her conclusions as to these matters is supported by substantial evidence. Second, Mrs. Graham contends that the trial court should have made the increase in support retroactive to August 1982, the date she filed her motion for modification; instead, the court made the increase retroactive to April 7, 1983. This is a matter committed to the sound discretion of the trial court, and the court did not abuse its discretion here. *See Trezevant v. Trezevant*, 403 A.2d 1134, 1138 (D.C.1979) ("we believe that any reasonable date on or after the filing of the motion may be

■ An original support order may be modified only upon a showing that there has been a material change in the circumstances of the parties.[5] *Hamilton v. Hamilton, supra* note 5, 247 A.2d at 422. In *Hamilton,* we stated that a material change in circumstances can be "a change which affects *either* the [parent's] ability to pay *or* the needs of the minor children," *id.* at 422–23 (emphasis added), and we have reiterated this disjunctive standard in several subsequent decisions. *See, e.g., Burnette v. Void,* 509 A.2d 606, 608 (D.C.1986); *Wright v. Wright,* 386 A.2d 1191, 1195 (D.C.1978); *Tennyson v. Tennyson, supra* note 5, 381 A.2d at 266.[6]

Nonetheless, the trial court was correct in noting that there is language in *Sheridan,* which suggests that the *Hamilton* standard is limited to cases in which the non-custodial parent's ability to pay *decreases* and further suggests that where the parent's resources *increase,* that only the second prong of the test, the increased needs of the children, is a proper basis for modification. *Sheridan, supra,* 267 A.2d at 346–47. As we later observed in *Tennyson,* however, these statements were merely dicta, as there was no evidence in *Sheridan* that the non-custodial parent's income had in fact increased. *Tennyson, supra,* 381 A.2d at 266 n. 3. Moreover, as we

went on to explain in *Tennyson,* the statements in *Sheridan* "appear[ ] overcome by ... subsequent legislative mandate." *Id.* D.C.Code § 16–916(a) (1981) requires courts to consider both parents as potential sources of support, and "[t]o ignore a change, occasioned by increase in the [non-custodial parent's] income, in the relative abilities of the parents to support their child would seem inconsistent with this mandate." *Tennyson, supra,* 381 A.2d at 266 n. 3. Thus, given the subsequent development of the law, we consider the language in *Sheridan* to be a mere aberration and, as dicta, not controlling of our decision in this case.

■ Having put the dicta in *Sheridan* aside, we cannot find that the procedure followed by the trial court comported with the standard for modification set forth in *Hamilton. Hamilton* and its progeny make clear that a material change in either the parent's income or in the needs of the children and the other spouse may be the basis for modification of the support order. *See Hamel v. Hamel,* 539 A.2d 195, 199 (D.C.1988). By insisting that there could be no increase in support without a commensurate increase in the needs of Mrs. Graham and the children, the trial court effectively nullified the first prong of this standard.[7]

chosen as the effective date of the order, and that this choice should be left to the sound discretion of the trial judge"). Third, Mrs. Graham asserts that it was error for the court to order a prospective decrease in alimony in anticipation of Mrs. Graham completing law school. She is correct in this regard: as we recently reaffirmed in *Joel v. Joel,* 559 A.2d 769 (D.C.1989), the trial court is required to make any periodic award of alimony a "permanent, fixed amount for an indefinite period of time" and cannot "build in later reductions by speculating about the parties' respective needs and abilities to pay in the future." *Id.* at 772. (The trial court does, of course, retain discretion to consider the spouses' prospective economic conditions in setting the permanent, fixed amount).

Finally, Mrs. Graham asks this court to review the denial of her Rule 60(b) motion concerning the division of marital property. This was the subject of a separate appeal before this court, No. 87–41, and a disposition has since been reached in this matter.

5. A motion for modification of support, therefore, is not to be used as a pretense to relitigate

the equities of the prior decree. *Tennyson v. Tennyson,* 381 A.2d 264, 266 (D.C.1977); *Hamilton v. Hamilton,* 247 A.2d 421, 423 (D.C.1968).

6. We also note that, subsequent to the proceedings in this case, the Council of the District of Columbia adopted this as the appropriate standard for modification of child support, and it has been codified at D.C.Code § 30–504 (1988).

7. Mr. Graham contends that the trial judge did not, in fact, limit the increase in support to the increase in Mrs. Graham's and the children's needs. Rather, he argues, the trial court held that a showing that the children's needs had increased was simply a threshold requirement; after this threshold was met, Mr. Graham asserts, both his ability to pay and his wife's and children's needs could be taken into account. As the trial judge found that the needs threshold was in fact met in this case, Mr. Graham concludes, both factors were fully and independently considered and no harm resulted.

We do not read the court's order to state this to be the standard it applied. Rather, we under-

Nor do we see any reason to apply a different standard where the parent's income increased and where it is decreased. To adopt such a distinction would mean that children would have to bear the burden of a lowered standard of living when their parent's income declined but could not share the benefit when that parent's resources grew—a situation for which we perceive little, if any, sensible justification.[8]

Furthermore, we think it proper that a material increase in the non-custodial parent's income can be the basis for an increase in child support. Although spouses may divorce, the children's legal relationship with both parents continues, and "[t]he children's station in life should not therefore be fixed forever to their parents' station in life at the time of the divorce." *Cole v. Cole*, 44 Md.App. 435, 409 A.2d 734, 741 (1979). We think it appropriate that a trial court may act to ensure that where there is a material increase in non-custodial parents' financial resources, that these parents do not increase their own standard of living without also ensuring that their children live as well as they.[9]

We note finally that the considerations which go into an award of alimony differ somewhat from those which determine child support. In this jurisdiction, parents, for example, have "an unqualified obligation to contribute to the support of their children." *Burnette, supra*, 509 A.2d at 608; *see also District of Columbia ex rel. W.J.D. v. E.M.*, 467 A.2d 457, 460 (D.C.1983). By contrast, an award of alimony to a former spouse is a matter left to the discretion of the trial court, *Leftwich v. Leftwich*, 442 A.2d 139, 142 (D.C.1982), and considerations other than a pure calculus of need and ability to pay (such as the length of marriage and the age of the parties) enter into the initial decision. *See McEachnie v. McEachnie*, 216 A.2d 169, 170 (D.C.1966). While we may assume that in the vast majority of cases, the relationship between spouses does not not survive after divorce to the same degree that the parent-child relationship does, by law the decree granting alimony, just as does the decree providing for child support, remains open for modification. *See* D.C.Code § 16–914(a); *Tydings v. Tydings*, 349 A.2d 462 (D.C.1975). A former spouse seeking an increase in alimony bears the burden of showing that an increase is justified. There must be "a showing of a substantial and material change in the conditions and circumstances of the involved parties since the entry of the decree." *Id.* at 463. A modification of alimony "must reflect changed needs or changed financial resources" (as opposed to "offensive" conduct on the part of the receiving spouse). *Alibrando v. Alibrando*, 375 A.2d 9, 15

---

8. There is another form of arbitrariness in this situation as well, in that the children's well-being comes to depend on the fortuity of which parent's income increases: in the first case, where the custodial parent's income rises, the children would almost inevitably benefit, for, as the parent increases the quality of his or her housing and food, for example, it simultaneously increases that of the others in his or her household; in contrast, where the non-custodial parent's income rises, the children would gain nothing.

9. Although not applicable to the present case, the child support guidelines recently enacted by the Council express a similar concern, stating as a basic principle in setting the original support order that "the child should not be living at a standard substantially below that of the non-custodial parent." D.C.Code § 16–916.1(b)(3), 37 D.C.Reg. 3720–21 (1990), enacted in D.C.Law 8–150, § 2, effective July 25, 1990, 37 D.C.Reg. 5138 (1990).

stand the trial court, upon finding that the needs of Mrs. Graham and the children had grown, to have looked to Mr. Graham's increased income solely to determine whether Mr. Graham had the present ability to afford to meet these newly increased needs and never to have viewed Mr. Graham's increased resources as an independent basis for awarding increased support. *See* Order of October 11, 1984 (denying Motion for Reconsideration) at 4 (looking to Mr. Graham's *present* financial ability to pay increased support and not to his change in circumstances; only Mrs. Graham's change in circumstances taken into account) and at 4–5 (stating fact that Mr. Graham's income rose "dramatically" shortly after divorce hearing was "irrelevant" in modification proceedings). We therefore cannot predict what determination the trial court would have reached had it applied the correct standard: given the substantial increase in Mr. Graham's salary, the court may well have ordered a greater increase in support if it had felt that the award could exceed the increase in the children's needs.

(D.C.1977). While it may deter marriage, or divorce, or both, to contemplate that the increase in the income of one divorced spouse, standing alone, will provide justification for an increase in support payments to the receiving spouse, a blanket rule precluding spouses from sharing in the increased resources of their former partners would be unacceptable. It may be, for example, that the spouse receiving support has contributed during the marriage so as to be partly or wholly responsible for the other spouse's subsequent income. Or, at the time of the divorce, there may have been insufficient resources for both spouses to maintain their previous standard of living, and the subsequent increase in the income of the spouse paying support might be used to meet the preexisting, though previously unmet, financial needs of the other spouse. In short, there may be circumstances, though unusual, in which it may be appropriate for the trial court to award increased alimony where only the income of the paying spouse, and not the needs of the receiving spouse, have increased. In any event, this is a matter for the trial court, marshalling the facts pursuant to correct legal standards.

### III.

Therefore, we reverse the trial court's order modifying the prior alimony and support orders and remand for further consideration in light of this opinion. We note that Mrs. Graham also challenges the award of attorney's fees as inadequate. In view of our reversal of the support modification in this case, we think it proper also to vacate the award of attorney's fees and remand for further consideration. *See Cooper v. Cooper,* 472 A.2d 878, 881 (D.C.1984); *Owens v. Owens,* 427 A.2d 933, 939 (D.C.1981). Finally, as seven years have passed since the entry of the original modification order, we leave it to the trial court's discretion whether to (1) reopen the record on remand for evidence of further changes in the parties' financial circumstances since that time or (2) issue a revised order based on the facts as found at the time (and any further findings necessary to the decision) which comports with

the standards set forth herein, and then allow the parties to file motions for further modifications as they feel necessary. *See Trezevant v. Trezevant, supra,* 403 A.2d at 1139.

Accordingly, the order of the trial court is

*Reversed and remanded.*

GALLAGHER, Senior Judge, concurring:

It seems to me that the dissenting opinion misconstrues the majority opinion and the supporting decisions there cited. The majority opinion simply holds, among other things, that where the financial situation of the father (or former husband) has improved since the original decree, upon application either the mother or the children, or both, are entitled to a review of the amounts of their alimony and child support payments to determine if an increase is warranted. The dissenting opinion seems to state that such a review, as a matter of law, must be restricted to child support payments only and may not reach support payments of mothers (or former wives). We, on the other hand, see no reason in logic nor in our decisions to so restrict the review by the trial judge upon application by former spouses.

The dissenting opinion addresses itself to the evidence on this score. We, on the other hand, are addressing only the law on the question. We think the evidentiary aspect is for the trial court after being advised on the controlling law.

TERRY, Associate Judge, concurring in part and dissenting in part:

While I am willing to join my colleagues in remanding the child support matter for reconsideration, I cannot go along with them in sending the alimony claim back to the trial court. Given the record in this case, I would hold that Mrs. Graham has failed to show that she is entitled to receive a single penny more in alimony. I would therefore affirm as to the alimony and reverse as to the child support.

The majority opinion recognizes that there is a tension between our decisions in

*Hamilton v. Hamilton,* 247 A.2d 421 (D.C.1968), and *Sheridan v. Sheridan,* 267 A.2d 343 (D.C.1970). In *Hamilton* we said that before a child support order may be modified, the party seeking modification must show that there has been a "material change in the circumstances of the parties—a change which affects *either* the father's ability to pay *or* the needs of the minor children." 247 A.2d at 422–423 (emphasis added).[1] In *Sheridan,* however, we said:

> Assuming, arguendo, that the father's ability to pay has increased, this fact in and of itself is an insufficient basis for a modification in this case.... A motion to increase must be founded on the increased needs of the children. Indeed, the father's ability to pay is relevant in granting or denying the increase, but it is not the basis on which an increase is initiated or founded.

267 A.2d at 346–347 (footnotes omitted). Unfortunately, we cited no authority for this proposition, and I am inclined to agree with the majority today, *ante* at 357, that these statements were merely dicta. The obligation of a parent in the District of Columbia to support his or her minor children[2] is "unqualified," *Burnette v. Void,* 509 A.2d 606, 608 (D.C.1986), and cannot be diminished by the mere happenstance that the children's parents are no longer married to each other. I think that *Hamilton,* the earlier precedent, states the rule which we must apply here,[3] and that *Sheridan,* to the extent that it is inconsistent with *Hamilton,* cannot be followed. *See M.A.P. v. Ryan,* 285 A.2d 310, 312 (D.C.1971). I

therefore agree that the change in circumstances which affects Mr. Graham's ability to pay—namely, his substantial increase in income after the divorce—warrants a remand for reconsideration of the request for an increase in child support payments without reference to *Sheridan.*[4]

Mrs. Graham's claim for an increase in alimony is an entirely different matter. My colleagues apparently acknowledge, *ante* at 358–359, that an award of alimony is far more discretionary than an award of child support and that need and ability to pay are not the only factors which a court may consider when faced with a request for alimony. As a general rule, any duty that one spouse may have to support the other ends upon the entry of a decree of divorce, subject only to court-ordered alimony payments. *See* D.C.Code §§ 16–912, 16–914(a) (1989). A former spouse seeking an increase in alimony bears the burden of showing that an increase is justified. *Tydings v. Tydings,* 349 A.2d 462, 463 (D.C.1975). I would affirm the trial court's conclusion that Mrs. Graham did not meet that burden.

The trial court wrote a 32–page opinion containing abundant findings of fact and conclusions of law. In its first few pages, the court summarized the history of the case and pointed out that Mr. Graham

> has been absolutely faithful in the payment of all of his court-ordered obligations.... Moreover, he has voluntarily paid, at [Mrs. Graham's] request, numerous bills over and above what he is ordered by the court to pay. Of even

---

**1.** Although *Hamilton* speaks of the father's ability to pay, the rule would of course be the same if the mother were the parent providing support for the children.

**2.** The duty of a parent to support a child continues until that child reaches the age of twenty-one. *Butler v. Butler,* 496 A.2d 621, 622 (D.C.1985). After the child's twenty-first birthday, however, a court has no power to order the parent to support the child further, *Norris v. Norris,* 473 A.2d 380, 381 (D.C.1984), unless exceptional circumstances dictate that parental support be continued past the age of majority. *See Nelson v. Nelson,* 548 A.2d 109 (D.C.1988) (parents have a duty to support disabled adult children who are unable to support themselves).

**3.** My colleagues are correct in observing, *ante* at 357 n. 6, that the *Hamilton* "either/or" rule is now codified at D.C.Code § 30–504(a) (1988), which was enacted in 1987.

**4.** Unlike my colleagues, however, I do not agree with the comment in *Tennyson v. Tennyson,* 381 A.2d 264, 266 n. 3 (D.C.1977), that a 1976 amendment to D.C.Code § 16–916 vitiated what the court said in *Sheridan.* That amendment did require courts "to consider both parents as potential sources of support," *ante* at 357, but it did not lessen the pre-1976 obligation of *fathers* to support their minor children. *See* D.C.Code § 16–916(a) (1973).

greater significance is the fact that, after he obtained a considerably more lucrative contract with [his employer] in March 1982, [he] offered on several occasions to pay [Mrs. Graham] more support than the amount specified in the court order, and [Mrs. Graham] rejected those offers. Finally, [Mr. Graham] voluntarily increased the amount of weekly payments by taking it upon himself [on two occasions] to increase the amount he deposited to her bank account.... [Mrs. Graham] initially refused his offers to pay the additional support, but has acquiesced by accepting and using the increased amounts deposited to her account.

The court then addressed the "numerous evidentiary problems" in Mrs. Graham's case:

[Mrs. Graham's] testimony was rambling, unresponsive, repetitive, inordinately defensive, unrealistic, and just plain not credible at numerous points.

To a substantial degree, [Mrs. Graham] was basically trying to relitigate the level of child support and alimony awarded by Judge Fauntleroy. Although she tried to cast her testimony in terms of increases which allegedly occurred in the last two years—because her counsel well understood the applicable legal standard for modification of support orders—it was clear to the Court that Ms. Graham was really attempting to contest the adequacy of the prior award. Therefore, much of her testimony about dramatic increases in need in the 2½ years since the divorce was simply not credible or was distorted....

The court went on to detail, over the next several pages, the weaknesses in Mrs. Graham's evidence. It then noted that since the divorce she had spent approximately $142,330.50—almost $57,000 per year—to support her household, over and above "all private school and college tuition and fees," which had been paid separately by Mr. Graham. In light of this evidence, the court understandably found Mrs. Graham's claim of "desperate economic circumstances" incredible:

In the final analysis, Ms. Graham has failed to provide any rational or coherent explanation as to how she has managed to spend $142,330.50 over the last 2½ years, while simultaneously claiming that she has not had enough money for food, clothes, and virtually all of the basic necessities needed by herself and her children.... [I]t is also clear that Ms. Graham has utterly failed or refused both to manage her money wisely and to make financial decisions that serve her children's best interests.

Nevertheless, because of Mr. Graham's improved financial situation, the court increased his child support payments by $15 per week (from $125 to $140) per child and his alimony payments by $100 per week (from $250 to $350).[5] Because Mr. Graham "was ready, willing, and able to commence paying increased support in approximately April 1983," the court made these increases retroactive to April 7, 1983. Mrs. Graham, unsatisfied, wants more.

I see no abuse of discretion in the trial court's refusal to increase Mr. Graham's alimony burden any more than it did. There is ample support in the record for the court's findings and conclusions. I think the court was right on target when it discerned that Mrs. Graham, unhappy with the original award of alimony and child support, "was really attempting to contest the adequacy of the prior award." The law forbids any such attempt. *Hamel v. Hamel*, 539 A.2d 195, 199 (D.C.1988) (motion to modify alimony order does not permit court "to reweigh the equities between the parties"); *see Hamilton v. Hamilton, supra*, 247 A.2d at 423 (child support order "is not subject to modification as a procedural means for reviewing the equities of the prior decree"). Furthermore, while there may be "unusual" circumstances, as the majority suggests, in which a trial court might appropriately increase an alimony award when only the income of the

---

5. The court also made other changes in the financial portions of the divorce decree which are not at issue here.

paying spouse has increased, none of the circumstances posited by the majority is established on the record before us here.

What this record does reveal is a blatant attempt by Mrs. Graham, without any legal justification, to squeeze more money out of her ex-husband because he has been fortunate enough to improve his financial situation since the divorce. I do not think she should be allowed to do so. Except for the minor change necessitated by *Joel v. Joel*, 559 A.2d 769, 770–772 (D.C.1989),[6] I would affirm the trial court's ruling on Mrs. Graham's claim for increased alimony. From my colleagues' decision to do otherwise, I respectfully but vehemently dissent.

---

6. See footnote 4 of the majority opinion, *ante* at 357.