Michael R. NEVAREZ, Appellant,

v.

Rebecca M. NEVAREZ, Appellee.

No. 91–FM–878.

District of Columbia Court of Appeals.

Submitted April 8, 1993.
Decided June 3, 1993.

Brian Booth, Portland, OR, filed a brief for appellant.

Leslie Fein and Patrick T. Hand, Washington, DC, filed a brief for appellee.

Before FERREN, SCHWELB and FARRELL, Associate Judges.

SCHWELB, Associate Judge:

Michael R. Nevarez (the father) appeals from an order of the trial court, dated July 19, 1991, substantially increasing his child support obligation over the amount required by an order issued in 1984 by the District Court of El Paso County, Texas (the Texas court). In a comprehensive opinion, see *R.M.N. v. M.R.N.*, 119 Daily Wash.L.Rptr.1985 (Super.Ct.D.C.1991), the judge required the father to pay Rebecca M. Nevarez (the mother) $1,000 per month during the first year and $1,210 per month thereafter, in comparison to $450 per month as ordered by the Texas court. The judge also ordered the father to pay accumulated arrearages, as well as the moth-

er's counsel fees, litigation costs, and certain travel expenses. The father appealed to this court on numerous grounds, set forth in an eighty-page brief. We are not persuaded by any of the father's contentions. Accordingly, we affirm.

## I.

Michael Nevarez and Rebecca Nevarez were married in 1972. Their first child was born during that year. The parties were divorced in Texas in 1974. In the divorce decree, the Texas court required the father to pay the mother $50 per month in child support.

In 1979, five years after the divorce, a second child was born to the couple. The father, after initially denying that the child was his, ultimately acknowledged paternity. In 1984, upon motion of the mother, the Texas court modified its decree. The court required the father to support the second child as well as the first and raised the father's monthly obligation to $212.50 per month per child, for a total of $425.

The father initially contemplated an appeal from the new order, but the parties resolved their differences. In return for the father's agreement not to appeal, the mother consented to a reduction in the amount which the father would be obliged to pay during the two months of the year when the children were to be with their father. She also agreed that the father would be permitted to claim the children as exemptions on his income tax return. These revisions were incorporated into an amended consent order. The basic amount which the father was required to pay each month during the part of each year when the children were to be with the mother was unaffected by the negotiated changes.

The mother and the two children continue to live in Texas; the father now resides in the District of Columbia.[1] By December 20, 1988, the father was substantially in arrears, and the mother registered the Texas order in the Superior Court pursuant to the Uniform Reciprocal Enforcement of Support Act (URESA), D.C.Code §§ 30–325, –326 (1988). The father interposed no objection to the registration and, by operation of law, the registered Texas order became enforceable as if it were an order of the Superior Court. *Id.* § 30–326(a).[2] In February 1989, the father's salary was attached to enforce his support obligations.

On June 13, 1990, the mother filed a motion in the Superior Court requesting an increase in the father's child support payments. She contended that the needs of the children, as well as the father's ability to pay,[3] had substantially and materially changed since the 1984 modification of the Texas court's order. The mother asked the court to order the father to pay child support in the amount required by the District's Child Support Guideline. D.C.Code § 16–916.1 (1992). The father opposed the motion, contending that the Superior Court lacked jurisdiction to modify the Texas court's order, that Texas law should apply, and that modification of the Texas court's order would violate the Full Faith and Credit Clause of the Constitution. The father further claimed that he had accumulated substantial debts and expenses, in reliance on the Texas court's order, and that it would be unfair to increase his support obligation. Finally, the father disputed the mother's assertion that the needs of the children had increased.

Following a contested evidentiary hearing, the trial judge ruled, *inter alia*, that as a result of the registration of the Texas order in the District, the Superior Court had jurisdiction over the subject matter and personal jurisdiction over the father, a District of Columbia resident. The judge held that application of District of Columbia law

---

1. The father claims that at certain times he lived in Maryland rather than in the District. It is evident from the record that his employment was in the District throughout and that he was primarily living here.

2. Section 30–326(a) provides in pertinent part that "[u]pon registration, the registered foreign support order shall be treated in the same manner as a support order issued by the [Superior] Court."

3. By this time, the father had become a government attorney.

was proper pursuant to URESA's choice of law provision, D.C.Code § 30–304 (1988).[4] Rejecting the father's constitutional claims, the judge held that the Full Faith and Credit Clause does not apply to future child support obligations, because such obligations are subject to modification as circumstances change. Acknowledging that the father had accumulated substantial debts, the judge found that the father had accorded very low priority to his child support responsibilities, and had elected instead to accommodate his own personal desires and purported needs.[5] The judge concluded, on the basis of the District's guideline and the father's gross annual salary of $57,054, that the father's obligation should be to pay child support in the amount of $1,176 per month. In light of the father's professed financial plight, however, the judge ordered that the father would be required to pay only $1,000 per month during the first year, but that this amount would be increased to $1,210 per month thereafter, to pick up accrued arrearages from the Texas order and to account, retroactively, for the amount due under District of Columbia law from the date he was first served with the motion for an increase. The judge also awarded the mother her costs, counsel fees and certain travel expenses. This appeal followed.

## II.

■■■ On appeal, the father presents numerous issues, most of which were fully and correctly addressed in the trial judge's opinion; we deal with them summarily.[6]

4. Section 30–304 provides as follows:
   Duties of support enforceable under this chapter are those imposed under the laws of any state in which the defendant was present during the period for which support is sought, or in which the dependent was present when the failure to support commenced or where the dependent is when the failure to support continues.
   *See also Rittenhouse v. Rittenhouse,* 461 A.2d 465, 466 (D.C.1983) (per curiam); *Harris v. Kinard,* 443 A.2d 25, 28 (D.C.1982).
   The parties' children continue to live in Texas, and the decree which the Superior Court judge has *modified* was issued by a Texas judge. A court might therefore arguably be justified in applying the laws of Texas, the state where "the dependent[s] [were] present," *see* § 30–304, *supra,* to this controversy. The father has not, however, renewed in this court his contention that correct choice-of-law principles required the judge to apply the substantive law of Texas rather than that of the District. Accordingly, that issue is not before us.

5. For example, the father contributed $470.25 each month to his retirement plan. He also acquired a Jeep Cherokee automobile after the present proceedings were instituted against him; the monthly payments on his promissory note and insurance totalled $600 per month. The father was living in a condominium apartment in which his monthly mortgage payment and condominium fee added up to $1041.

6. We do not agree with the father's contention that the District's guideline—an exercise of the legislature's authority to enact domestic relations legislation and to protect children from harm—is subject to "strict scrutiny," or that it violates constitutional due process or equal protection strictures. *See A.S. v. District of Columbia,* 593 A.2d 646, 648 (D.C.1991); *Nelson v.*

*Roberts,* 216 Ga. 741, 119 S.E.2d 545, 546 (1961). As noted by the trial judge, *R.M.N., supra,* 119 Daily Wash.L.Rptr. at 1991 n. 13, a child support order which is subject to modification in the original state is not a final judgment to which the Full Faith and Credit Clause applies. *Rollins v. Rollins,* 602 A.2d 1121 (D.C.1992); *Schlecht v. Schlecht,* 387 A.2d 575, 577 (D.C. 1978).

In spite of the father's contrary contention, we are satisfied that the guideline applies to this case. Section (a) of the guideline, D.C.Code § 16–916.1(a), provides, *inter alia,* that "in any case that seeks to modify an existing child support order" in which child support is appropriate, the judicial officer shall "enter a judgment in accordance with the child support guideline." Without addressing this language, the father focuses on Section (*o*) of the guideline. D.C.Code § 16–916.1(*o*), which provides that "a child support order under [the guideline] or ... D.C.Code § 30–504 (1989) shall be subject to modification by application of the guideline...." He claims that the original Texas court order in the present case was not issued pursuant to the guideline or pursuant to § 30–504, and that the guideline is therefore inapplicable.

Section 30–504(a) provides, however, that *any* child support order may be modified upon a showing of a substantial and material change in circumstances. The section became effective in 1987, but essentially restated and slightly modified existing law. See discussion at page 870, *infra.* We conclude that the reference in the guideline to § 30–504, although perhaps imprecisely formulated, was designed to bring within the ambit of § 16–916.1(*o*) all child support orders cognizable under § 30–504(a), which effectively means all child support orders. This construction harmonizes 16–916.1(*o*) with § 16–916.1(a). If the legislature had intended the

The father does, however, raise one question of first impression under the District's guideline. He contends that, in reasonable reliance upon the 1984 order of the Texas court (from which he agreed, for a consideration, not to appeal) he assumed obligations and made expenditures which significantly affected his financial condition. He maintains that it is therefore unfair to compel him to pay the amount ordered by the trial court.

The father relies in substantial part on *Cooper v. Cooper,* 472 A.2d 878 (D.C.1984) (per curiam). In that case, the parties had negotiated a Separation and Property Settlement Agreement, which included provisions for spousal and child support. The court then entered a judgment of divorce which "ratified, confirmed and incorporated, but did not merge the Agreement." *Id.* at 879. The wife subsequently asked the court for an increase in the level of support. The trial judge framed the question presented as being whether "there has been a material change in the needs of the child or the ability of the parents to pay," and held that the wife had proved that such a change had in fact occurred. *Id.* This court reversed, holding that the judge had applied an incorrect standard. We stated that since the level of support had been

negotiated as part of a separation agreement, the court was free to modify it only

> if the party seeking modification shows (1) a change in circumstances *which was unforeseen at the time the agreement was entered* and (2) that the change is both substantial and material to the welfare and best interests of the children.... Presumably, at the time of a separation agreement the best interests of the children are a paramount consideration. If, thereafter, the best interests of the children *are threatened in a material way by circumstances unforeseen at the time of the agreement* it is reasonable for a court to entertain a request for modification of either custody or support provisions.... However, a change in the parents' financial circumstances alone cannot provide the basis for modifying a contract between the parties.

*Id.* at 880–81 (emphasis added; citations and internal quotation marks omitted).[7]

In addressing the father's argument based on *Cooper,* the trial judge raised the question whether that decision has been legislatively overruled by the subsequent enactment in 1987, three years after *Cooper,* of D.C.Code § 30–504(a) (1988). *R.M.N., supra,* 119 Daily Wash.L.Rptr. at 1990 n. 9. That section of the URESA statute, which is also discussed briefly in

---

guideline to be applicable to the modification of only those orders entered after 1987, it would surely have said so directly, and would have avoided the inclusion of a contrary provision in § 16–916.1(a).

The father also argues that the registration of the Texas order in the Superior Court did not authorize that court to increase the level of child support. The fact that the Texas court's order required payment of $450 per month when it was registered in the District does not compel the trial court to retain it at that level for all time. *See* D.C.Code § 30–326(a) (1988); *R.M.N., supra,* 119 Daily Wash.L.Rptr. at 1990–92, and authorities there cited.

The father's voluntary accumulation of obligations to various creditors, *e.g.,* by the purchase, since the mother's filing of the motion to increase child support, of an expensive automobile, does not entitle him to a reduction, for his claimed inability to pay is self-inflicted. *Smith v. Smith,* 427 A.2d 928, 932 (D.C.1981). Indeed, "[t]he courts properly show no patience towards a person who seeks to circumvent family obligations without first decreasing his own expen-

ditures." *Benvenuto v. Benvenuto,* 389 A.2d 795, 800 (D.C.1978). Even if, as the father contends, the mother had failed to demonstrate the children's perceived "need" for increased child support—a premise which is questionable at best— the guideline is based on objective facts, such as the father's gross income, rather than on subjective notions of need; moreover, a material change in the father's ability to pay warrants an increase, regardless of any increase in "needs." *Graham v. Graham,* 597 A.2d 355, 358 (D.C. 1991).

The trial judge's findings of fact, which are based, in part, on his favorable assessment of the mother's credibility and on his unfavorable finding as to the father's, are not clearly erroneous. Finally, the trial judge did not abuse his broad discretion in awarding the mother her costs and counsel fees. *Steadman v. Steadman,* 514 A.2d 1196, 1200 (D.C.1986).

**7.** We have applied the *Cooper* standard in URESA proceedings where the facts have warranted its application. *See Albus v. Albus,* 503 A.2d 1229, 1232 (D.C.1986).

note 6, *supra*, provides that "[a]ny order requiring payment of an amount of child support, *regardless of whether the amount of the child support was the subject of a voluntary agreement of the parties,* may be modified upon a showing that there has been a substantial and material change in the needs of the child *or* the ability of the responsible relative to pay since the day on which the order was issued." (Emphasis added). We do not here question the Council's authority to change the standards announced in *Cooper,* for "the obligation of child support is, admittedly, statutory, so that the level of child support can always be modified to assure compliance with the statute." *Hamel v. Hamel,* 539 A.2d 195, 200 (D.C.1988). We need not decide whether *Cooper* has been legislatively superseded, however, for the agreement on which the father relies is not one to which the logic of that decision extends or should extend.

*Cooper* was decided in the context of a comprehensive separation agreement which was negotiated in order to resolve, if possible with some finality, the numerous issues which inevitably arise upon the dissolution of a marriage. The agreement between the Coopers was intended to provide the definitive resolution of any issues as to custody and spousal and child support which might reasonably be anticipated. The parties, as the court noted in its opinion, could be expected to treat the interests of their children as the paramount consideration and to plan systematically for their future.

■ The agreement on which the father claims to rely in this case, on the other hand, was not a comprehensive separation agreement at all. Rather, it was a somewhat incidental sequel to a proceeding which the mother had instituted in the Texas court in an attempt to increase the father's child support obligation to a level which conformed to new realities, including the birth five years earlier of the parties' second child.[8] The basic level of child sup-

port was "set pursuant to an original order of the court after a hearing and fact-finding." *Hamel, supra,* 539 A.2d at 198. It was the result of the court's "own determination of the proper disposition of the rights ... [of] the parties." *Id.* at 199. The father's agreement, for a consideration, to forego his right to appeal from a litigated order did not convert that order into a comprehensive separation agreement to which the deferential *Cooper* mode of analysis should apply. We therefore conclude that, assuming without deciding that *Cooper* has not been superseded by statute, the decision in that case is not dispositive here.

■ In the absence of a controlling separation agreement, the husband's child support obligation may be modified upon "a showing that there has been a substantial and material change in the needs of the child or the ability of the responsible relative to pay since the day the order was issued." D.C.Code § 30–504 (1988); *accord, Cooper, supra,* 472 A.2d at 880. Moreover, the guideline creates "a presumption that there has been a substantial or material change of circumstances that warrants a modification of a child support order if application of the guideline to the current circumstances of the parties results in an amount of child support that varies from the amount of the existing child support order by 15% or more." D.C.Code § 16–916.1(*o*)(3) (1992). This presumption indisputably applies here; the guideline amount was approximately two and a half times the amount required by the 1984 Texas order.

The guideline further states that the foregoing presumption may be rebutted by

(A) Proof of special circumstances such as a circumstance that would take a case outside the guideline; or

(B) Proof of substantial reliance on the original child support order issued prior to adoption of the guideline, and that

---

**8.** Prior to the 1984 order, the father's entire obligation was to pay child support in the amount of *$50 per month, or less than two dollars a day.* For five years, he paid this amount for two children, one in her teens and one a tot. It is therefore questionable whether the earlier order conformed even to old realities.

application of the guideline, would yield a patently unjust result.

*Id.* § 16–916.1(*o*)(3)(A) & (B). With respect to subsection (A), we are aware of no "special circumstance" in this case which would preclude our application of the guideline. Turning to subsection (B), the father professes to have relied on the prior Texas order, but he has not shown that such reliance was reasonable, or that the amount ordered by the Texas court was designed to be of permanent duration in the absence of unforeseen and unforeseeable events. The father has likewise failed to demonstrate that the application to him of a guideline routinely enforced against the generality of noncustodial parents living in this jurisdiction would "yield a patently unjust result."

■ We conclude by noting that the trial judge's decision is supported by basic principles of fairness and justice. The Texas "agreement" in this case was not one for the sale of widgets. *See Bracey v. Bracey,* 589 A.2d 415, 418 (D.C.1991) (dissenting opinion).[9] *Id.* Child support payments are for the benefit of the children, not the mother, and the children's interest is paramount. *Cooper, supra,* 472 A.2d at 880. Prior to the adoption of the guideline, court-ordered child support was often so inadequate that the non-custodial parent (usually the father) preserved or improved his standard of living, while the children were relegated to substantially less favorable circumstances than they had enjoyed when the family was intact. *Bracey, supra,* 589 A.2d at 418 (dissenting opinion); *see Fitzgerald v. Fitzgerald,* 566 A.2d 719, 724 (D.C.1989).

But "[a]lthough spouses may divorce, the child's legal relationship with both parents continues, and the child's station in life should not therefore be fixed forever to the parent's station in life at the time of the divorce." *Graham v. Graham, supra,* 597 A.2d at 358. The guideline specifically provides that "[w]hen child support is established, the child shall not live at a standard

9. The majority in *Bracey* did not reach or discuss the issue addressed in the cited portion of

substantially below that of the noncustodial parent." D.C.Code § 16–916.1(b)(3) (1992).

The purpose of the "guideline" legislation would be undermined if a lawyer earning substantially in excess of $50,000 per year were able to escape its coverage by "reliance" on an order and "agreement" of the kind here proffered by the father. It may be that the father will have to modify his lifestyle, live in less expensive housing, drive a cheaper car (or use public transportation), and focus on his children's present needs rather than on his own retirement. That, however, is the very result which the Council intended. Parents, and not just children, must now make some sacrifices.

Accordingly, the judgment appealed from must be and it is hereby

*Affirmed.*

the dissenting opinion.