Charles CLARK, Appellant,

v.

Roberta CLARK, Appellee.

No. 92–FM–1242.

District of Columbia Court of Appeals.

Argued Jan. 13, 1994.
Decided March 15, 1994.

E. Marie Wilson–Lindsey, for appellant.

Karen L. McDonald, Asst. Corp. Counsel, with whom John Payton, Corp. Counsel, and Charles L. Reischel, Deputy Corp. Counsel, were on the brief, for appellee.

Before ROGERS, Chief Judge, and TERRY and KING, Associate Judges.

KING, Associate Judge:

In this domestic relations matter, the husband appeals the trial court's order affirming a hearing commissioner's increase of his monthly child support obligation beyond the $500 sum set forth in the parties' separation and property settlement agreement. On appeal, he contends the trial court erred because the hearing commissioner lacked authority both to modify an agreement that had not been incorporated into any court order and to impose a permanent order of support different from that set forth in the agreement. The husband also contends that equal protection principles [1] are violated when the District of Columbia provides legal assistance to custodial parents but does not provide the same service for non-custodial parents. We reject both claims and affirm.

## I.

In December 1987, the trial court entered an order of divorce, approving the parties' separation and property settlement agreement ("agreement") without merging the agreement into the divorce order. The agreement provided that the mother would have custody of the couple's daughter and would receive a monthly payment of $500 for child support from the father. In the fall of 1988, the husband failed to make his support payments, and the wife sought assistance from the Office of Corporation Counsel ("OCC"). On January 5, 1989, the OCC filed a Petition for Child Support in the trial court on her behalf.[2] In response, a hearing was held on July 27, 1989, during which the parties agreed to a temporary support order that required the husband to make support payments, in the amount of $500 a month, into the court registry. Thereafter, the husband made support payments in that amount into the court registry for the next eighteen months.

On November 16, 1989, the husband filed a motion for summary judgment, claiming that because the agreement entered into by the parties had not been merged into the order granting the divorce, the wife was precluded from seeking an increase in child support.[3] In her response to that motion the wife moved for an increase in child support payments. The husband also claimed that legal representation by the OCC on behalf of the wife violated the Equal Protection Clause because legal assistance by the OCC is only provided to the custodial spouse.

On February 21, 1990, Judge George Goodrich, relying on *Cooper v. Cooper,* 472 A.2d 878 (D.C.1984), which established the standard for modification of unmerged, unincorporated child support agreements, granted the husband's summary judgment motion with respect to the wife's request for an increase. The judge ruled that to obtain a modification of such an agreement, *Cooper* requires the custodial spouse to show, *inter alia,* that there has been a material change in circumstances that was unforeseen at the time the agreement was made—a showing the wife failed to make. The July 27, 1989, temporary support order remained in force,

---

1. "Although the Equal Protection Clause of the Fourteenth Amendment does not apply to the District of Columbia, it is unquestioned that equal protection principles are embodied in the Due Process Clause of the Fifth Amendment, which does apply." *Hessey v. Burden,* 615 A.2d 562, 567 n. 6 (D.C.1992).

2. Due to an oversight, according to the OCC, the petition was filed as a "new support order case rather than returning to the divorce case."

3. This motion was filed after the husband's motion to consolidate the support action with the divorce action was granted.

however, and the husband continued to make support payments pursuant to it.

On June 12, 1990, on the wife's behalf, the OCC filed a motion to increase child support, claiming there was a substantial and material change in the needs of the child and the ability of the father to contribute to his daughter's care. The husband was also served with interrogatories and discovery requests. After the husband failed to provide discovery, the trial court ordered him to comply, warning that sanctions would be imposed if he failed to do so. The husband continued to oppose the motion to increase support, asserting that the *Cooper* requirement had not been met because nothing unforeseen had occurred since the parties' separation and property agreement was entered; the husband also moved for summary judgment. On March 4, 1991, after the husband persisted in his refusal to provide discovery, Judge Joan Zeldon fined the husband $2,200 and precluded him from challenging the material change contention made by the wife.[4] On August 22, 1991, Judge Cheryl Long denied the husband's summary judgment motion, ruling that the wife could seek an increase in child support under the Child Support Guideline set forth in D.C.Code §§ 16–916.1 (1993 Supp.) and 30–504 (1993).

On March 11, 1992, Hearing Commissioner Hugh Stevenson, pursuant to Judge Long's ruling, granted the wife's request for an increase in child support. Applying the Child Support Guideline in § 16–916.1, the commissioner ordered the husband to pay $1,034 per month in child support. In doing so the commissioner ruled that the July 27, 1989, temporary support order provided a basis for modifying the terms of the parties' separation and property agreement even though the agreement had not been merged or incorporated into the divorce order. The husband challenged the commissioner's ruling, claiming that (1) there was no evidence of material change or increased ability to pay, (2) he did not understand the implications of his agree-

ing to the temporary support order, and (3) equal protection was violated because of the legal assistance provided to the wife by the OCC.

Judge Alprin affirmed the commissioner's decision, ruling that Judge Goodrich's grant of summary judgment was only applicable to the wife's request for an increase in support and that the temporary support order "remained a fully valid court order." Judge Alprin also rejected the contention that the husband did not knowingly consent to entry of the temporary support order[5] and the equal protection claim.

## II.

▪ Our analysis begins with a brief review of the applicable principles before the enactment of the Child Support Guideline. It was then settled law that modification of support payments under an unmerged, unincorporated separation agreement could only be ordered:

> if the party seeking modification shows (1) a change in circumstances which was unforeseen at the time the agreement was entered and (2) that the change is both substantial and material to the welfare and best interests of the child.

*Cooper, supra,* 472 A.2d at 880 (citations omitted). Since private resolution of domestic disputes is favored, a higher standard must be met to modify a private agreement than is so with a court order setting forth the obligations of the parties. *Id.* A higher standard is appropriate because there is a presumption that "a child support agreement negotiated between two parents is adequate to meet the child's foreseeable needs, and that at the time of the agreement the best interests of the child were a paramount consideration." *Dershowitz v. Doctors,* 585 A.2d 174, 175 (D.C.1991) (citation and internal quotations omitted).

---

4. That ruling has not been challenged in this appeal.

5. In denying the claim that he had not understood or consented to entry of the temporary support order, Judge Alprin found that the hus-band "never filed a motion to review the [temporary support order], nor has he ever attempted, until now, to place validity of the [temporary support order] in question." That finding is not challenged on appeal.

In 1987, the "District of Columbia Child Support Enforcement Amendment Act of 1985" was enacted. *See* D.C.Code §§ 30–501 to –531 (1993). Section 30–504(a) provides that:

> Any *order* requiring payment of an amount of child support, regardless of whether the amount of the child support was the subject of a voluntary agreement of the parties, may be modified upon a showing that there has been a substantial and material change in the needs of the child or the ability of the responsible relative to pay since the day on which the order was issued.

(Emphasis added). In 1990, the District of Columbia enacted "The Child Support Guideline Amendment Act of 1990," *see* D.C.Code § 16–916.1(a), which provides that

> In any case ... that involves the ... enforcement of child support, or ... seeks to modify an existing child support *order*, if the judicial officer finds that there is an existing duty of child support, the judicial officer shall conduct a hearing on child support, make a finding, and enter a judgment in accordance with the child support guideline ("guideline") established in this section.

(Emphasis added). The purpose of this section was "to establish a presumptive guideline for the determination of payment of child support in the District of Columbia." REPORT OF THE COUNCIL OF THE DISTRICT OF COLUMBIA COMMITTEE ON THE JUDICIARY ON BILL 8–461, CHILD SUPPORT GUIDELINE AMENDMENT ACT OF 1990, at 3 (Apr. 11, 1985), D.C.Law 8–150. Judge Long relied on D.C.Code §§ 30–504(a) and 16–916.1 in ruling that the wife was entitled to a modification of the amount of child support; Judge Alprin agreed in affirming the hearing commissioner's ruling.

■ The provisions of D.C.Code § 30–504(a) and 16–916.1 apply, however, only if

there was an existing child support order since, as reflected in the terms of the statute emphasized above, such an order is a prerequisite to the trial court's modification of the amount of child support. In this case, it is undisputed that the agreement between the parties, which was not incorporated into the order of divorce, does not constitute an existing "child support order" within the meaning of the two statutes. Judge Alprin ruled, however, that the temporary support order of July 27, 1989, did constitute such an order. As has been noted, the husband was making child support payments pursuant to that order when the wife made the second request for an increase, and he thereafter continued to make the payments into the court registry.

In affirming the hearing commissioner, Judge Alprin ruled that the temporary support order "superseded the original agreement between the parties on the issue of child support in that the agreement was adopted by the court as its own determination of the proper disposition of the rights and property between the parties." Judge Alprin also ruled that the temporary support order "changed the obligation of [the husband] so that he would thereafter pay child support pursuant to a judicial order, rather than as a matter of private agreement between himself and [the wife]." Because of the existence of the temporary support order, Judge Alprin concluded that the hearing commissioner was authorized to enter a permanent order of support using the guideline to calculate the amount required to be paid.

■ If a court order requiring the payment of child support comes into existence subsequent to the execution of an unmerged, unincorporated separation and property agreement—as occurred here upon the entry of the temporary support order—then the principles embodied in the Child Support Guideline apply rather than the requirements set forth in *Cooper.*[6] The trial court then

---

**6.** The government urges the court to hold that *Cooper* and its progeny have been overruled by the Child Support Guideline. This court is asked to rule that, pursuant to the statute, any prior agreement may be modified because "the impact of D.C.Code § 30–504(a) ... provides courts with the authority to amend a child support order 'regardless of whether the amount of the

child support was the subject of a voluntary agreement of the parties.' " We need not reach that question because we are satisfied, as Judge Alprin ruled, that once the temporary support order was entered by the court, there was an order within the meaning of D.C.Code § 16–916.1(a) and § 30–504(a).

has the authority to issue a new, permanent support order. *See* D.C.Code § 16–916.1(a). In *Padgett v. Padgett,* 472 A.2d 849, 852 (D.C.1984), the court held that:

A consent order is like a separation agreement, insofar as it is a type of contract and places the parties in a contractual relationship. It is also, however, an order of the court, indistinguishable in its legal effect from any other court order, and therefore subject to enforcement like any other order.

(Citations omitted). Thus, the temporary support order, which came about only because of the failure to make payments pursuant to the agreement, became an order of the court enforceable against the husband and could serve as a basis for a modification pursuant to the statutory provisions relied upon by the trial court. Accordingly, we hold that Judge Alprin did not err in ruling that the order fell within the scope of D.C.Code § 16–916.1, the Child Support Guideline, and therefore the trial court could modify the amount of child support established by the parties' separation and property agreement and enter a permanent order of child support.

### III.

 Appellant contends that it is a violation of equal protection principles to provide "virtually free legal representation to the custodial parents." This argument is without merit. D.C.Code § 30–308 (1993) provides:

In any instance in which the Corporation Counsel of the District of Columbia is satisfied that the duties of support sought to be enforced are child or spousal support obligations that are being enforced pursu-

ant to a plan as described in 42 U.S.C. § 654, which has been approved by the Secretary of the Department of Health and Human Services under 42 U.S.C. § 651 et seq., it shall be the Corporation Counsel's duty to represent the plaintiff in any proceedings arising under this chapter.

The Supreme Court has held that, when reviewing an equal protection challenge to state regulations that do not affect a fundamental constitutional right or a suspect classification, the regulations will be upheld if they are rationally related to a legitimate state purpose. *See Gregory v. Ashcroft,* 501 U.S. 452, ——, 111 S.Ct. 2395, 2406, 115 L.Ed.2d 410 (1991). Applying that principle, the court has held that "legislation that does not employ suspect classifications or impinge on fundamental rights must be upheld against equal protection attack when the legislative means are rationally related to a legitimate governmental purpose." *Hessey v. Burden,* 615 A.2d 562, 575 (D.C.1992) (quoting *Hodel v. Indiana,* 452 U.S. 314, 331, 101 S.Ct. 2376, 2386, 69 L.Ed.2d 40 (1981)) (internal quotations omitted). The husband does not claim that providing counsel to custodial parents violates a fundamental right: nor does he maintain that non-custodial parents are a suspect classification. Rather, he asserts that non-custodial parents "are a burdened class of people" who are denied "a public benefit." [7] Because there is neither a fundamental right nor suspect classification, D.C.Code § 30–308 is "entitled to a presumption of rationality that can only be overcome by a clear showing of arbitrariness and irrationality." *Id.* (internal quotations omitted).

 In determining whether the practice of providing counsel to custodial parents is rationally related to a legitimate governmen-

---

7. Although appellant cites cases involving invidious discrimination based on gender and legitimacy, appellant does not suggest that something other than the rational basis test should be applied in the instant appeal. In any event, appellant has failed to show that non-custodial parents are unfairly burdened or that they constitute a "suspect class" requiring that the statute be given strict scrutiny. Nor has he shown that they are an almost suspect class requiring a showing that the statute is narrowly tailored to achieve an important governmental objective and is substantially related to achieving it. *See Califano v.*

*Goldfarb,* 430 U.S. 199, 97 S.Ct. 1021, 51 L.Ed.2d 270 (1977) (gender); *Craig v. Boren,* 429 U.S. 190, 197, 97 S.Ct. 451, 456, 50 L.Ed.2d 397 (1976) (gender); *Gomez v. Perez,* 409 U.S. 535, 93 S.Ct. 872, 35 L.Ed.2d 56 (1973) (illegitimacy); *W.M. v. D.S.C.,* 591 A.2d 837 (D.C.1991) (same); *District of Columbia ex rel. W.J.D. v. E.M.,* 467 A.2d 457, 461 (D.C.1983) (illegitimacy). Even if appellant had done so, he has failed to demonstrate that the statute does not serve important governmental objectives and is not substantially related to achievement of them.

tal purpose, "we must answer two questions: (1) Does the challenged legislation have a legitimate purpose? and (2) Was it reasonable for the lawmakers to believe that use of the challenged classification would promote that purpose?" *Id.* (citation and internal quotation omitted). If there is any reasonable basis for providing custodial parents with legal representation, we must reject the husband's challenge because "a classification, though discriminatory, is not [necessarily] arbitrary nor violative of [equal protection]." *Id.*

There is little doubt that providing legal assistance to custodial parents satisfies the rational relationship test. The stated purpose of the Child Support Enforcement Act is "to establish an improved procedure for the ... collection of debts due and owing for the support of minor children." REPORT OF THE COUNCIL OF THE DISTRICT OF COLUMBIA COMMITTEE ON THE JUDICIARY ON BILL 6–134, DISTRICT OF COLUMBIA CHILD SUPPORT ENFORCEMENT ACT OF 1985, at 2 (Dec. 4, 1985), D.C.Law 6–166 (the "non-payment of child support by absent parents has reached crisis proportions in the United States" and the District of Columbia). "Reality dictates that the use of strong, effective methods of implementing child support laws are necessary." *Id.* The goal of reducing the number of families needing government assistance is a legitimate state interest, and providing assistance to custodial parents seeking to enforce support obligations is rationally related to that goal. *See* S.REP. No. 93–1356, 93rd Cong., 2d Sess. (1974), *reprinted in* 1974 U.S.C.C.A.N. 8133, 8158 (procedures to assist custodial parents in collecting child support are to be made available to families even if they are not on the welfare rolls). We conclude, therefore, that D.C.Code § 30–308, which provides legal representation to the custodial spouse, does not deny the husband the equal protection of the law.

*Affirmed.*