**Joseph R. MAZZA, Appellant,**

v.

**Valerie B. HOLLIS, Appellee.**

**No. 05–FM–1574.**

District of Columbia Court of Appeals.

Argued April 22, 2008.

Decided May 15, 2008.

Edouard J.P. Bouquet for appellant.

Robin A. Clark, with whom Eric M. Glass was on the brief, for appellee.

Before FARRELL and BLACKBURNE–RIGSBY, Associate Judges, and NEBEKER, Senior Judge.

FARRELL, Associate Judge:

D.C.Code § 46–204(a) (2007) provides, in relevant part, that "[a]ny order requiring payment of an amount of child support . . . may be modified upon a showing that there has been a substantial and material change in the needs of the child or the ability of the responsible relative to pay since the day on which the order was issued."[1] Similarly, D.C.Code § 16–916.01(a) (2007), part of the District's Child Support Guideline, provides that "in any case that seeks to modify an existing support order, if the judicial officer finds that there is an existing duty of child support, the judicial officer shall conduct a hearing on child support, make a finding, and enter a judgment in accordance with the child support guideline."[2]

This appeal presents a very narrow question: Do the quoted provisions permit modification in accordance with their terms of a child support agreement (1) reached by the parties in the state of Georgia before divorcing there and (2) which by Georgia law became part of the judgment or "order" of the court granting the divorce. We answer that question "yes," and accordingly reverse the order of the Superior Court declining to modify child support and remand for consideration of the request to modify in accordance with the Child Support Guideline.

## I.

Appellant Joseph Mazza and appellee Valerie Hollis were married in Virginia in 1991 and had one child born in 1997. They

---

1. Section 46–204(a) recodified, without material change, former § 30–504(a) enacted in 1987.

2. Section 16–916.01(a) recodified, without material change, former § 16–916.1(a) enacted in 1990. The Guideline, in keeping with § 46–204(a), provides that "a parent [may] seek a modification of a support order upon a showing of a material and substantial change in the needs of the child or the ability of the parent with a legal duty to pay support to pay." D.C.Code § 16–916.01(r)(4)(C).

separated in 1999 and were divorced later that year in Georgia. Before the divorce, they had entered into a Settlement Agreement in Georgia (the Agreement) dealing with, among other things, custody and support of the child.

In August 1999, Hollis moved to Washington, D.C. with the child. Three months later, Mazza also relocated to the Washington, D.C. metropolitan area. In 2001 the Georgia divorce decree was registered in the Superior Court of the District of Columbia. On July 1, 2004, Mazza filed a Motion to Modify Custody and Child Support in the Superior Court, seeking a reduction in the amount of his monthly support obligation because of a "substantial and material change in circumstances."[3] Hollis opposed the motion, relying on this court's decision in *Cooper v. Cooper*, 472 A.2d 878 (D.C.1984), and in moving for summary judgment she also asked for an increase in Mazza's monthly child support obligation under the terms of the Agreement. The trial judge initially denied Hollis's motion for summary judgment, reasoning that D.C.Code §§ 46–204(a) and 16–916.01(a), rather than *Cooper*, established the legal standard for modification of Mazza's child support obligation. After an evidentiary hearing, however, the judge changed his mind, ruled that the *Cooper* standard governed, and found that Mazza had not made the restrictive showing that *Cooper* requires for a reduction in child support. The judge simultaneously ordered a modest increase in Mazza's support obligation in accordance with the terms of the Agreement.

On appeal, Mazza challenges both the denial of his request for a reduction of the child support amount and the increase in his obligation which the judge ordered.

## II.

█ Under our decision in *Cooper*, a child support provision of a separation agreement that has been incorporated, but not merged, into an order of divorce gives the trial court only "limited authority" to modify the agreed child support. *Duffy v. Duffy*, 881 A.2d 630, 638 (D.C. 2005).[4] We agree with the trial judge's determination, on the record before him, that Mazza did not meet the *Cooper* test for reducing the amount of child support the parties had agreed upon in 1999. But that conclusion does not decide this case. For, unlike in the situation *Cooper* dealt with, if "a settlement agreement is merged into the trial court's order [of divorce], ... the binding force of the amount of child support is ... based on the ... authority of the court's order," *Duffy*, 881 A.2d at 639; in that situation, the parties' agreement has been "adopted by the court as its own determination of the proper disposition...." *Hamel v. Hamel*, 539 A.2d 195, 199 (D.C.1988). And, when that is so, "the principles embodied in the Child Support Guideline [and § 46–204(a) ] apply [to a modification request] rather than the requirement[s] set forth in *Cooper*." *Clark v. Clark*, 638 A.2d 667, 670 (D.C.1994) (footnote omitted); *see Duffy*, 881 A.2d at 639 ("[T]he court [then] has discretion to modify its own

---

**3.** He asserted, in particular, that the child now lived with him 40% of the time, and that Hollis had since become a lawyer, thus increasing her earning potential.

**4.** The *Cooper* standard allowed modification only upon a showing (1) of "a change in circumstances which was unforeseen at the time the agreement was entered and (2) that

the change is both substantial and material to the welfare and best interests of the children." *Cooper*, 472 A.2d at 880 (citations omitted). "[A] change in the parents' financial circumstances alone cannot provide the basis for modifying a contract between the parties." *Id.* at 881 (citation and internal quotation marks omitted). *But see* note 5, *infra*.

order based on a showing by either party of a material change in the circumstances of either the child or the parents.") (citation omitted).

Examination of Georgia law demonstrates that when Mazza and Hollis became divorced there, their existing child support agreement was effectively "adopted by the [divorce] court as its own determination of the proper disposition" of child support. *Hamel,* 539 A.2d at 199. Under Georgia law, "[i]n a divorce action, the [settlement] agreement, if accepted by the court, becomes the judgment of the court itself and ... the court has the discretion to approve or reject the agreement, in whole or in part." *Bridges v. Bridges,* 256 Ga. 348, 349 S.E.2d 172, 174 (1986); *see also Pannell v. Pannell,* 162 Ga.App. 96, 290 S.E.2d 184, 185 (1982) ("agreements between husband and wife ... are, by presumption of law, merged in the final verdict of the jury in the divorce suit" (quotation marks omitted); "[u]nderstandings ... not incorporated into the divorce decree are not binding"). Georgia, in other words, does not recognize the distinction between merger and incorporation embodied in the *Cooper* limitation; at least where child support is concerned, an agreement accepted by the divorce court may be modified in accordance with the support guidelines contained in Georgia law. *See, e.g., Moccia v. Moccia,* 277 Ga. 571, 592 S.E.2d 664, 665 (2004); *Gowins v. Gary,* 288 Ga.App. 409, 654 S.E.2d 162 (2007).

The parties here do not dispute that the Agreement was incorporated in their divorce decree, hence that the child support provision was accepted by the court and became "the judgment of the court itself." *Bridges, supra.* It therefore was an "order" of the court within the meaning of §§ 46–204(a) and 16–916.01(a), and subject to modification in accordance with those statutes. That would not be true if the term "order" under these provisions refers only to orders of the Superior Court, but Hollis has not made that argument, and we see no basis in the statutes for that limitation. Section 46–201(15B) defines a "support order" as "a judgment, decree, or order ... issued by *a* court or an administrative agency of competent jurisdiction ... for the support and maintenance of a child, including a child who has attained the age of majority under the law of *the issuing state*" (emphasis added)—clear indications that the legislature meant no limitation that would exclude an order of a Georgia court. Moreover, the word "any," as in "[a]ny order," § 46–204(a), "read naturally ... has an expansive meaning, that is, 'one or some indiscriminately of whatever kind.'" *Ali v. Federal Bureau of Prisons,* —— U.S. ——, ——–——, 128 S.Ct. 831, 835–36, 169 L.Ed.2d 680 (2008) (citations omitted). We conclude that the Georgia divorce decree incorporating and approving the parties' child support agreement was an order within the meaning of District law, thus permitting a change in Mazza's obligation if warranted by the Child Support Guideline.

This conclusion makes it unnecessary for us to answer the question left open as well in *Clark,* 638 A.2d at 670 n. 6, and *Nevarez v. Nevarez,* 626 A.2d 867, 871 (D.C.1993), of whether §§ 46–204(a) and 16–916.01(a) legislatively overruled our *Cooper* decision. Nor need we consider the retroactive application to the parties' conduct in 1999 of D.C.Code § 16–916.01(t), a later Guideline amendment enacted in 2002 that by its terms appears to overrule *Cooper.*[5] Final-

---

**5.** That provision allows modification of a child support provision "[u]pon the occurrence of a substantial and material change in circumstances sufficient to warrant the modi-

fication ... *without regard to* whether the agreement or settlement is entered as a consent order or is incorporated or merged in a

ly, District of Columbia law envisions generally that a child support order issued by a tribunal of another state will be registered in the District pursuant to D.C.Code §§ 46–301 *et seq.* (2001) in order to be subject to modification. *See* § 46–306.11; *Prisco v. Stroup*, 947 A.2d 455, 458 (D.C. 2008). The parties' divorce decree was registered with the Superior Court in 2001, and because no argument has been made that this did not do service under the registration statute, we do not consider the point further.

Accordingly, we vacate the order of the trial court and remand for consideration of Mazza's request for modification in accordance with § 46–204(a) and the Child Support Guideline. Further, because decision on Mazza's request necessarily will affect any entitlement of Hollis to an increase in child support as provided in the Agreement, we vacate as well the order increasing Mazza's support obligation and require further consideration of that issue too.

*So ordered.*

court order" (emphasis added). The legislative history confirms that § 16–916.01(t) was intended to "overturn[] the decision of the D.C. Court of Appeals in *Cooper* ...." KATHY PATTERSON, CHAIRPERSON, COMMITTEE ON THE JUDICIARY, REPORT ON BILL 14–635, THE "DOMESTIC RELATIONS LAWS CLARIFICATION ACT OF 2002," at 4 (May 29, 2002).

In *Duffy, supra,* the court had no occasion to consider the effect of § 16–916.01(t) on the continued vitality of the *Cooper* limitation.