*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

## DISTRICT OF COLUMBIA COURT OF APPEALS

No.12-FM-1386

ANTWANYE ERIC FORD, APPELLANT,

V.

RITA CASTILLO, APPELLEE.

Appeal from Order of the Superior Court
of the District of Columbia
(DRB-3227-03)

(Hon. Danya A. Dayson, Trial Judge)

(Argued September 25, 2013     Decided September 4, 2014)

*Johnny M. Riddick* for appellant.

Rita Castillo, *pro se*.

Before GLICKMAN and BECKWITH, *Associate Judges*, and NEBEKER, *Senior Judge*.

BECKWITH, *Associate Judge*: Appellant Antwanye Eric Ford contends that the trial court erred in calculating his adjusted gross income (AGI) under the D.C. Child Support Guideline, D.C. Code § 16-916.01 (2012 Repl.),[1] by not subtracting certain expenses that he must pay under a separation agreement that had been

---

[1] All subsequent statutory references are also to D.C. Code (2012 Repl.).

"incorporated and merged" with the parties' divorce decree. We agree that the trial court should have subtracted those expenses in calculating his AGI. We therefore reverse and remand for a recalculation of Mr. Ford's child support obligation.

## I.    Background

Mr. Ford and appellee Rita Castillo married on October 4, 1997, and divorced, in an uncontested divorce, on January 20, 2004. The parties have one child together, born on March 6, 1998. As part of the divorce, the parties, both acting *pro se*, drafted a separation agreement providing for custody, access, education, and support. It stipulated that Mr. Ford would have the child for the first half of the week and Ms. Castillo would have the child for the second half of the week. Mr. Ford would bear the entire cost of the child's private school tuition, which, after financial aid and other grants, totaled $8,650 per school year. Mr. Ford would pay for the child's health insurance; each parent would pay one half of the child's unreimbursed medical costs, school aftercare, and airfare to the Dominican Republic (for twice-annual visits with Ms. Castillo's family); and each would contribute $125 quarterly for clothing and $125 annually for Christmas gifts. Mr. Ford earned approximately $50,000 per year at the time of the agreement, and Ms. Castillo earned approximately $47,000. This separation agreement was "incorporated and merged" with the Judgment of Absolute Divorce

issued by the trial court on January 20, 2004.

In April 2011, the parties agreed that the child would reside with Ms. Castillo during the school year. The following month, Ms. Castillo filed a petition seeking child support under the D.C. Child Support Guideline. Both parties' incomes had increased substantially since 2004. At the time of Ms. Castillo's petition, Mr. Ford was earning $237,920 per year and Ms. Castillo was earning $90,000 per year. Ms. Castillo alleged in her petition that the new custody arrangement and Mr. Ford's increased earnings warranted a modification in child support under D.C. Code § 46-204 (a).

In a series of hearings, the parties disputed whether Mr. Ford's obligations under the Judgment of Absolute Divorce should figure into the monthly support calculation. The cost of private school tuition, in part because of Mr. Ford's greater earnings, had increased to $22,151 per year. The trial court told the parties on April 4, 2012, that it would not credit Mr. Ford's expenses for tuition, nor his other required expenses, in calculating his AGI because they were "a discrete obligation separate and apart from child support." In a May 30, 2012, written order, the court stated that "[Mr. Ford's] obligation to pay tuition exists independently of his obligation to pay child support." And in a July 9, 2012, written order, the trial court reiterated that Mr. Ford's expenses in paying the

child's "private school tuition, his annual travel to the Dominican Republic, one half of his extraordinary unreimbursed medical expenses, one half of other school costs, and maintenance of his medical insurance . . . do[] not receive a credit in the child support Guideline calculation."

The court gave three reasons for not crediting these expenses. First, "tuition is listed as a separate obligation in the agreement, which although not dispositive, is a factor subject to consideration." The court noted that a chart in the "Child Support" section of the agreement "explicitly addressed 'other school costs,' thereby indicating that the parties chose to distinguish tuition payments as separate from their overarching child support obligations." Second, "the tuition provision lists both an amount of tuition and names a specific school . . . implying that this was not only a financial term but one related to legal custody." Third, "the language of [the] Divorce Decree notes that parties have 'settled matters relating to *child support* and custody, visitation, medical and health insurance for the child, *education*, and other matters.' By distinguishing child support from education, the Court treated tuition separately from child support, and the parties did not object or file any pleading to amend the judgment" (emphasis added by the trial court).

Having decided not to subtract these expenses from Mr. Ford's gross income, the court calculated his monthly obligation under the Guidelines to be

$1,446. Because Mr. Ford's and Ms. Castillo's combined AGI exceeded $240,000 per year, the Guideline projection did not "presumptively" apply and the court had discretion to impose a greater (although not a lesser) amount. D.C. Code § 16-916.01 (h). In this case, the court found the minimum amount "fair and just." The court also ordered Mr. Ford to pay Ms. Castillo $14,460 in retroactive support for the ten months that Ms. Castillo's petition had been pending. Mr. Ford appealed.

## II.    Analysis

"A trial court has a considerable measure of discretion in determining the appropriate amount of alimony and child support," and "that determination will not be disturbed on appeal unless the court clearly abused its discretion." *Araya v. Keleta*, 65 A.3d 40, 48 (D.C. 2013) (quotation marks and citations omitted). We review questions of statutory interpretation de novo. *See Wilkins v. Ferguson*, 928 A.2d 655, 667 (D.C. 2007). In interpreting statutes, we begin with the provision's plain language and also consider "'its placement and purpose in the statutory scheme.'" *Tippett v. Daly*, 10 A.3d 1123, 1126 (D.C. 2010) (en banc) (quoting *Bailey v. United States*, 516 U.S. 137, 145 (1995)).

Mr. Ford argues that the trial court erred in treating the child-related obligations he assumed under the divorce decree as "discrete obligation[s] separate and apart from child support" and declining to credit them when calculating his

AGI (and based on his AGI, his minimum monthly child support payment).[2] We conclude that in calculating Mr. Ford's AGI, the trial court should have counted the tuition payment and Mr. Ford's other child-related obligations as "prior child support orders" and deducted them from Mr. Ford's gross income.[3]

The Guideline directs courts to "[r]efer to Worksheet B in Appendix III to calculate child support in cases involving shared physical custody."[4] D.C. Code § 16-916.01 (x). That worksheet follows the instructions set forth in D.C. Code § 16-916.01 (q): To reach a parent's AGI, it takes each parent's gross income and adds or subtracts alimony, subtracts "prior child support orders," and adjusts for additional children living in the home. A parent's monthly obligation is then

---

[2] At oral argument, Mr. Ford clarified that he does not seek to modify the obligations—including paying the child's tuition—that he assumed in the separation agreement.

[3] We reject Mr. Ford's contention that the trial court erred in modifying the parties' child support arrangement at all. The court first found a "substantial and material change," D.C. Code § 46-204 (a), in the child's needs because the child was spending significantly more time with the mother. It also found a "substantial and material change" in Mr. Ford's ability to pay based on Mr. Ford's increase in income. It noted that while private school tuition had also increased, tuition nevertheless occupied a lesser percentage of his income. These facts suffice to demonstrate a substantial and material change warranting a modification in Mr. Ford's child support obligation.

[4] The trial court used a "shared physical custody" arrangement when running the Guideline in this case and estimated that Mr. Ford cared for the child 35% of the time. *See* D.C. Code § 16-916.01 (q)(1).

computed from that AGI.  Worksheet B cites D.C. Code § 16-916.01 (d)(4) when directing that "prior child support orders" be deducted from gross income.  That statute provides that "[a] support order that is being paid by either parent shall be deducted from the parent's gross income before the child support obligation is computed."  The term "support order" is defined in two statutes as follows:

> "Support order" means a judgment, decree, or order, whether temporary, final, or subject to modification, issued by a court or an administrative agency of competent jurisdiction, for the support and maintenance of a child, including a child who has attained the age of majority under the law of the issuing state, or a child and the parent with whom the child is living, which provides for monetary support, health care, arrearages, or reimbursement and which may include related costs and fees, interest and penalties, income withholding, attorneys' fees, and other relief.

D.C. Code § 16-901 (8); § 46-201 (2).

In this case, the terms of the separation agreement drafted by Mr. Ford and Ms. Castillo became "issued by a court" within the meaning of D.C. Code § 16-901 (8) when they were incorporated into the divorce decree in 2004.  "The purpose of incorporating the terms of a separation agreement into a separation or dissolution decree is to make them the terms of the decree."  LINDEY AND PARLEY ON SEPARATION AGREEMENTS AND ANTENUPTIAL CONTRACTS (Matthew Bender) § 83.30 (2d ed. 2013).  *See also Brown v. Dyer*, 489 A.2d 1081, 1083 (D.C. 1985) (granting the Superior Court's Family Division jurisdiction over an action to

recover payment promised in an incorporated-but-not-merged agreement).[5]

Further, Mr. Ford's obligations to pay tuition and health insurance, as well as his other obligations, shared with Ms. Castillo, to pay for the child's clothing, Christmas gifts, after-school programs, unreimbursed medical costs, and travel to the Dominican Republic, were "for the support and maintenance of a child" within the meaning of D.C. Code § 16-901 (8).[6] The statute's broad conception of the "the support and maintenance of a child" includes "monetary support, health care, arrearages, or reimbursement" and "related costs and fees." Our case law has also

---

[5] Separation agreements that are not only "incorporated" but also "merged" into a court order are, of course, also "issued by a court" within the meaning of D.C. Code § 16-901 (8). *See Mazza v. Hollis*, 947 A.2d 1177, 1179 (D.C. 2008) (explaining that the parties' merged agreement had been "adopted by the court as its own determination of the proper disposition" (quoting *Hamel v. Hamel*, 539 A.2d 195, 199 (D.C. 1988))); *Duffy v. Duffy*, 881 A.2d 630, 639 (D.C. 2005) ("Where a settlement agreement is merged into the trial court's order . . . the binding force of the amount of child support is not based on the contractual obligation arising from an agreement between the parties, but on the authority of the court's order."). Because this case does not involve a court's authority to modify a separation agreement, we have no need to explore any distinction between incorporated-and-merged agreements and incorporated-but-not-merged agreements. *See Mazza*, 947 A.2d at 1180 (discussing the conflict between the standard for modifying unmerged agreements in *Cooper v. Cooper*, 472 A.2d 878, 880 (D.C. 1984), and the standard later enunciated in D.C. Code § 16-916.01 (t)).

[6] Ms. Castillo's child-related expenses under the separation agreement—for example, the obligation to pay her portion of the child's clothing, Christmas gifts, after-school programs, and unreimbursed medical costs—are also court-ordered expenses "for the support and maintenance of a child" and would be deducted from her gross income in calculating her AGI for Guideline purposes.

embraced an expansive understanding of child support. In *Brown v. Dyer*, 489 A.2d 1081, a woman sued her ex-husband after he refused to pay for their child's private school tuition, which he had agreed to pay in a property settlement agreement incorporated into their divorce decree. We construed the suit "as an action for child support" and found the ex-husband "obligated to pay." *Id.* at 1083. In *Carr v. Haynes*, 374 A.2d 868 (D.C. 1977), a woman sought to compel her ex-husband to contribute to their child's private school tuition paid during their separation. We deemed her action "clearly one for child support" because the ex-husband "had recognized the need of the children to attend a private school and had agreed they should attend." *Id.* at 870.[7]

We conclude that the separation agreement's child-related provisions qualify as "support orders" under D.C. Code § 16-901 (8) and that Mr. Ford's reasonable expenses in furtherance of those obligations "shall be deducted from the parent's gross income before the child support obligation is computed." D.C. Code § 16-916.01 (d)(4). This result honors the plain meaning of the statute and obviates scrutiny of *pro se* agreements for clues about whether the parties themselves considered any particular obligations to be "child support." It also comports with

---

[7] In *Carr v. Haynes*, deeming the tuition payment "child support" was necessary to our holding because had we not done so, according to the opinion, we could not have awarded attorneys' fees to the ex-wife. *Carr*, 374 A.2d at 870.

the statutory scheme underlying D.C. Code § 16-916.01 (q) and Worksheet B in Appendix III. *See Cass v. District of Columbia*, 829 A.2d 480, 482 (D.C. 2003) (urging "an interpretation that makes sense of the statute as a whole"). That scheme directs courts to deduct certain expenses from parents' gross income and to calculate monthly obligations only from the remainder. It conceives of alimony, "prior child support orders," and adjustments for other children living in the home as spoken for—that is, as previously reserved carve-outs.

Because Mr. Ford and Ms. Castillo together earn more than $240,000, the Guideline projection is not presumptive and the trial court may impose an amount greater than the amount yielded by the Guideline. D.C. Code § 16-916.01 (h). Under the same provision, the court may not impose an amount less than the Guideline's projection. The trial court in this case imposed what it computed to be the exact minimum. As the trial court erred in not counting Mr. Ford's expenses for tuition and other obligations as "support orders" in calculating his AGI, we reverse the court's judgment and remand to allow the court to consider imposing, at its discretion, a lesser monthly child support payment down to the new minimum.[8]

---

[8] The new minimum is not very different from the old minimum. If the trial court inputs $24,000—what Mr. Ford claims as the cost of his court-ordered obligations—into line 1(b) of Appendix III's Worksheet B in D.C. Code § 16-

(continued…)

*So ordered.*

---

(…continued)

916.01, which is currently line 1(c) on the shared custody framework of the online Guideline calculator (http://csgc.oag.dc.gov/application/main/intro.aspx), then even without considering any court-ordered child-related expenses claimed by Ms. Castillo, the Guideline yields a monthly obligation of $1,363—$83 less than the original $1,446 order. This estimate uses the trial court's other inputs, including that Mr. Ford has a child at home (other than the child in this case) whom he has a legal duty to support.